**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KELLY LEE TANNER,
　　　　　*Petitioner-Appellant,*

　　　　v.

E. K. MCDANIEL; FRANKIE SUE DEL
PAPA,
　　　　　*Respondents-Appellees.*

No. 06-15405

D.C. No.
CV 99-0238 PMP

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued and Submitted
January 12, 2007—San Francisco, California

Filed July 13, 2007

Before: John T. Noonan, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tashima

## COUNSEL

Jason Carr, Assistant Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

Robert E. Wieland, Deputy Attorney General, Reno, Nevada, for the respondents-appellees.

## OPINION

TASHIMA, Circuit Judge:

Kelly Lee Tanner appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Tanner contends that the district court erred in rejecting his

claims that he received ineffective assistance of counsel in his state criminal proceedings, that his guilty plea was not knowing and voluntary, and that the district court should have granted his request for an evidentiary hearing. The district court issued a certificate of appealability as to all three issues. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

## BACKGROUND

In June 1993, Tanner shot and killed his wife, Julie Tanner, as she lay asleep in their bed. Tanner also forced their twelve-year-old foster son to engage in oral sexual intercourse with him sometime in April or May 1993. In December 1993, Tanner pleaded guilty in Nevada district court to first degree murder with the use of a deadly weapon and battery with intent to commit sexual assault.

At Tanner's plea hearing, the judge informed Tanner that if he did not plead guilty, he would have the right to a jury trial, the right to have the charges against him proved beyond a reasonable doubt, the right to confront witnesses against him, the right to present and subpoena witnesses, and the right to remain silent. Tanner said that he understood that he was giving up those rights by pleading guilty. The judge did not tell Tanner that he was entitled to take an appeal after pleading guilty.[1]

Tanner was subsequently sentenced to imprisonment for

---

[1]Prior to the plea hearing, Tanner had signed a plea memorandum, which stated that Tanner waived certain appeal rights, using the following language:

> I understand that I have the right to appeal from adverse rulings on pretrial motions only if the State and the Court consent to my right to appeal. In the absence of such an agreement, I understand that any substantive or procedural pretrial issue or issues which could have been raised at trial are waived by my plea.

two consecutive terms of life without parole for the murder,[2] and a five-year concurrent term for the battery. Tanner's counsel never informed Tanner that he could file a direct appeal from his conviction or sentence, nor did he otherwise consult with Tanner regarding the possibility of an appeal.

Two years later, in May 1996, Tanner attempted to file a direct appeal to the Nevada Supreme Court, alleging that he had received ineffective assistance of counsel and been denied his right to an appeal. Tanner's appeal was rejected because it was untimely. In August 1996, Tanner filed a federal habeas petition alleging the same violations, but the petition was dismissed as unexhausted due to Tanner's failure to pursue state collateral review. Tanner returned to state court and filed a state habeas petition, which the Nevada Supreme Court eventually dismissed as untimely. Tanner then filed a second federal habeas petition renewing his earlier claims.

The district court dismissed Tanner's petition on the ground that Tanner had procedurally defaulted his claims. We reversed, holding that the state procedural rule relied on by the Nevada Supreme Court in denying review was inadequate, as applied in Tanner's case, to bar federal habeas review. *Tanner v. McDaniel*, 97 Fed. Appx. 202, 202-03 (9th Cir. 2004). On remand, the district court reached the merits of Tanner's petition and rejected his claims that he was provided ineffective assistance of counsel and that his plea was not knowing and voluntary. Tanner timely appeals.

## STANDARD OF REVIEW

We review de novo a district court's denial of a 28 U.S.C. § 2254 habeas corpus petition. *Zichko v. Idaho*, 247 F.3d 1015, 1019 (9th Cir. 2001). Because the Nevada courts have

---

[2]The second term was applied as a sentence enhancement for the use of a deadly weapon in the commission of the murder. *See* Nev. Rev. Stat. § 193.165 (1993).

not reviewed the merits of Tanner's claims, the deference to state court decisions ordinarily required by the Antiterrorism and Effective Death Penalty Act of 1996 is inapplicable. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) ("[W]hen it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo."); *see* 28 U.S.C. § 2254(d).

## DISCUSSION

### I.   Ineffective Assistance of Counsel

Relying on *Strickland v. Washington*, 466 U.S. 668 (1984), and *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), Tanner first contends that his attorney's failure to consult with him regarding an appeal following his guilty plea and sentencing violated his constitutional right to effective assistance of counsel. In *Flores-Ortega*, 528 U.S. at 476-77, the Supreme Court held that the "now-familiar" *Strickland* test for evaluating ineffective assistance of counsel claims applies to the situation where a defense attorney has failed to file a notice of appeal on behalf of the client. In so holding, the Court overruled precedents from several federal circuits that held that defense counsel had a duty to file a notice of appeal in all cases, except where the defendant affirmatively consented to refrain from filing an appeal. Those circuits held that an attorney's unconsented-to failure to file a notice of appeal was automatically deemed ineffective assistance of counsel. The Court rejected such a *per se* rule, stating that a "circumstance-specific reasonableness inquiry [as] required by *Strickland*" should be used to evaluate whether a defense attorney performed deficiently in failing to file an appeal. *Id.* at 478-80.

**[1]** In instances where the defense attorney did not file an appeal because he never spoke with the client about such a possibility, as occurred in this case, *Flores-Ortega* held that courts must consider "whether counsel's failure to consult with the defendant itself constitutes deficient performance."

*Id.* at 478. To assist lower courts in answering that question, the Court described the general circumstances under which defense counsel is obligated to consult with the defendant about an appeal. According to the Court, defense counsel

> has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480.

Relying on the *Flores-Ortega* standard, Tanner contends that a rational defendant in his position would have wanted to appeal his conviction and sentence because there were non-frivolous grounds for appeal in his case. Therefore, Tanner argues, his counsel's failure to discuss the possibility of an appeal with him constituted inadequate assistance of counsel in violation of Tanner's rights under the Sixth and Fourteenth Amendments.

The State argues that *Flores-Ortega* announced a new rule of constitutional law that cannot be applied retroactively on habeas review, and that under prior law counsel had no duty to consult with Tanner regarding an appeal. The State argues in the alternative that, even if *Flores-Ortega* governs, counsel did not perform deficiently in failing to consult with Tanner.

We conclude that *Flores-Ortega* did not create a new rule of constitutional law, and thus that its holding may be applied to Tanner's case. We also conclude, however, that even under the standard described in *Flores-Ortega*, Tanner's ineffective assistance of counsel claim fails.

### A. Tanner Has Not Sought Application of a New Rule

**[2]** Under *Teague v. Lane*, 489 U.S. 288, 310 (1989), new rules of constitutional law are generally inapplicable to cases which have become final before the new rules are announced.[3] Tanner's conviction became final on April 7, 1994,[4] almost six years before the holding in *Flores-Ortega*. Because the State has invoked the *Teague* anti-retroactivity rule, we must decide whether *Flores-Ortega* may be applied to Tanner's case. *See Caspari v. Bohlen*, 510 U.S. 383, 389 (1994) (noting that once a state "argue[s] that the defendant seeks the benefit of a new rule of constitutional law, the court *must* apply *Teague* before considering the merits of the claim").

**[3]** Generally, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301. In alleging deficient performance by his attorney, Tanner seeks to rely only on the portion of *Flores-Ortega*'s holding that defense counsel has a duty to consult with the defendant regarding an appeal when there is reason to think that a rational defendant would want to appeal, such as when there are nonfrivolous grounds for appeal. Therefore, for purposes of our *Teague* inquiry, we focus on the question of whether, as of April 1994, precedent dictated that counsel had an obligation to consult with the client regarding an appeal under those circumstances.[5]

---

[3]There are two exceptions to the *Teague* rule, neither of which is at issue in this case. *See Teague*, 489 U.S. at 311.

[4]A conviction becomes final for *Teague* purposes when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987). Under Nevada Rule of Appellate Procedure 4(b)(1), Tanner's time for appeal ended thirty days after the judgment of conviction was entered, or thirty days from March 8, 1994. Since Tanner did not file an appeal, his conviction became final on April 7, 1994.

[5]This is an issue of first impression in our circuit. However, the Third and Fourth Circuits have held that *Flores-Ortega* did not announce a new

**[4]** At the time of Tanner's conviction, it was well-established that the two-pronged test announced in *Strickland* generally governed ineffective assistance of counsel claims. *See Williams v. Taylor*, 529 U.S. 362, 391 (2000). Under *Strickland*, "the defendant must show that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." 466 U.S. at 687. The attorney's performance is evaluated against "an objective standard of reasonableness," which is ascertained in light of prevailing professional norms and all relevant circumstances. *Id.* at 688. American Bar Association ("ABA") standards and similar professional rules may be used as "guides to determining what is reasonable" performance, though such standards are not dispositive. *Id.* at 688-89.

**[5]** As of 1994, it was clear that reasonable competence under the *Strickland* standard required that a defense attorney whose client had a sound basis for appeal advise the client of that fact and inquire into whether the client wished to pursue an appeal. *Strickland* itself described counsel's duty "to consult with the defendant on important decisions" as among defense counsel's "basic duties." *Id.* at 688. A year earlier, the Court had stated that among the defendant's "fundamental decisions regarding the case" are the decisions "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal . . . ." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). *Strickland* and *Jones*, taken together, established that defense counsel had the duty to consult with the defendant regarding an appeal in at least some circumstances.

---

rule of constitutional law. *Frazer v. South Carolina*, 430 F.3d 696, 706 (4th Cir. 2005); *Lewis v. Johnson*, 359 F.3d 646, 655 (3d Cir. 2004). In *Daniel v. Cockrell*, 283 F.3d 697, 707-08 (5th Cir. 2002), *abrogated on other grounds by Glover v. United States*, 531 U.S. 198 (2001), the Fifth Circuit appeared to conclude that the second prong of *Flores-Ortega* created a new rule regarding proof of prejudice when counsel fails to discuss an appeal with the client. However, the court did so without discussion, and provided an alternative basis for its holding immediately afterward. *Id.* at 708.

Given that most defendants are not versed in the law well enough to recognize whether they have a valid basis for appeal, the most obvious occasion when the duty to discuss an appeal would arise would be when there are nonfrivolous grounds for appeal. It is evident, both from Supreme Court precedent and as a matter of common sense, that the decision whether to appeal requires reasoned legal advice from counsel. Just as a defendant is unlikely to create winning arguments or navigate complex appellate procedures on his own, so the defendant is unlikely to be capable of determining whether there are meritorious issues that can be raised on direct appeal unless he has expert advice from counsel. *See Evitts v. Lucey*, 469 U.S. 387, 394 n.6 (1985) (describing counsel's role on appeal as "that of [an] expert professional whose assistance is necessary in a legal system governed by complex rules and procedures for the defendant to obtain a decision at all"); *Douglas v. California*, 372 U.S. 353, 357-58 (1963) (ruling that federal constitution requires that an indigent defendant be provided "the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf" on appeal). At a minimum, courts should have recognized post-*Strickland* that a reasonably effective attorney would inform the client when he or she had a good reason to appeal, such as a meritorious issue to be raised on appeal; without such advice, an uninformed client could be deprived of a potentially successful appeal altogether.[6]

Moreover, ABA standards in 1994 put defense attorneys on notice that they should discuss any viable grounds for appeal with their clients. *See Flores-Ortega*, 528 U.S. at 490 (Souter, J., concurring in part, dissenting in part) (quoting portion of

---

[6]Supreme Court precedent recognizes the importance of preserving a defendant's right to pursue potentially meritorious claims on appeal. *See, e.g.*, *Penson v. Ohio*, 488 U.S. 75, 84 (1988) (holding that state court's "determination that arguable issues were presented by the [trial] record . . . created a constitutional imperative that counsel be appointed" to prosecute appeal for indigent defendant).

the 1993 ABA Standards for Criminal Justice that stated that trial counsel "should give the defendant his or her professional judgment as to whether there are meritorious grounds for appeal").

**[6]** Therefore, we conclude that *Flores-Ortega* broke no new ground in holding that reasonably effective performance requires a defense attorney to discuss an appeal with her client whenever there is a rational basis to think that her client should appeal. That obligation already followed from *Strickland*'s general standard for evaluating professional competence, applied in light of prevailing professional norms and the critical importance of the criminal defendant's decision whether to exercise his right to appeal.

We reject the State's suggestion that in 1994 a court could reasonably have held that federal law imposed no obligation on defense attorneys to discuss an appeal with their clients, unless a client expressly requested an appeal, and that as a consequence, *Flores-Ortega*'s description of the duty to consult regarding an appeal created a new constitutional rule. The state cites *Rodriquez v. United States*, 395 U.S. 327 (1969), and *Carey v. Leverette*, 605 F.2d 745 (4th Cir. 1979) (per curiam), but those cases do not support the State's theory. In *Rodriquez*, the Court recognized the per se rule that "[a] lawyer who disregards a defendant's specific instructions to file a notice of appeal acts in a professionally unreasonable manner." *Flores-Ortega*, 528 U.S. at 477 (citing *Rodriquez*). The Court did not, however, state or imply that a defendant *must* request an appeal before he may challenge his attorney's failure to file one. *Carey*, decided pre-*Strickland*, suggests that a defense attorney's failure to discuss an appeal with a client who has chosen to plead guilty is not actionable under the federal constitution, barring "extraordinary circumstances." *Carey*, 605 F.2d at 746. But the Fourth Circuit has itself held that *Carey* conflicted with the subsequent holdings in *Strickland* and *Jones*. *Frazer*, 430 F.3d at 708-09. Thus, a court in 1994 could not reasonably have relied on either *Rodriquez* or

*Carey* to conclude that counsel was required to discuss meritorious grounds for appeal with the client only if the client first requests that an appeal be taken.

Indeed, the Court itself in *Flores-Ortega* characterized its decision as an application of *Strickland*; the error that the Court corrected in *Flores-Ortega* was the failure of certain lower courts to recognize that *Strickland*'s "circumstance-specific reasonableness inquiry" continues to govern counsel's responsibilities with respect to appeal.[7] *See, e.g.*, *Flores Ortega*, 528 U.S. at 477 (stating that "we hold that [the *Strickland*] test applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal"); *id.* at 487 (stating at conclusion of opinion that "[t]he court below undertook neither part of the *Strickland* inquiry we have described").

---

[7]Although the Court resolved a circuit split in *Flores-Ortega*, that fact alone does not imply that the Court announced a new constitutional rule. *Cf. Caspari*, 510 U.S. at 393-94 (looking to divided prior rulings of lower federal and state courts to confirm analysis that particular rule at issue was not dictated by existing precedent). Rather, the Court was correcting the course of several federal courts of appeals that had departed from the *Strickland* fact-specific standard and imposed a per se obligation on defense attorneys to file notices of appeals in all cases. *See Flores-Ortega*, 528 U.S. at 476, 478; *United States v. Stearns*, 68 F.3d 328, 330 (9th Cir. 1995); *Romero v. Tansy*, 46 F.3d 1024, 1030-31 (10th Cir. 1995); *United States v. Tajeddini*, 945 F.2d 458, 466-68 (1st Cir. 1991). Other circuits had refused to implement such a rule, but had not held that defense counsel was *never* obliged to raise the possibility of an appeal with the client. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *Morales v. United States*, 143 F.3d 94, 96-97 (2d Cir. 1998); *Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994); *see also Estes v. United States*, 883 F.2d 645, 648-49 (8th Cir. 1989). If any court had taken such a position, that position would have been unreasonable in light of *Strickland*, which requires examination of the reasonableness of counsel's performance under all the circumstances. *Cf. Flores-Ortega*, 528 U.S. at 481 (stating that Court has consistently rejected "mechanistic rules" in analysis of effectiveness of counsel). Nor did any of the courts in those cases hold that it would be objectively reasonable for counsel to fail to discuss an appeal with her client when there were nonfrivolous grounds for appeal.

Additionally, the fact that the general nature of the *Strickland* standard requires courts to elaborate upon what an "objective standard of reasonableness" means for attorney performance in innumerable factual contexts supports our conclusion: Each time that a court delineates what "reasonably effective assistance" requires of defense attorneys with respect to a particular aspect of client representation, *see Strickland*, 466 U.S. at 687, it can hardly be thought to have created a new principle of constitutional law. As Justice Kennedy wrote in concurrence in *Wright v. West*, 505 U.S. 277 (1992), "[w]here the beginning point is a rule of . . . general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent." *Id.* at 309 (Kennedy, J., concurring in judgment).[8] In applying *Strickland*'s general requirement of "reasonably effective assistance" to the particular context of defense counsel's duty to consult regarding an appeal, *Flores-Ortega* did not produce "a result so novel" as to have forged a new rule.

We therefore now proceed to the merits, inquiring whether Tanner's counsel should have recognized that a rational defendant in Tanner's position would wish to appeal.

---

[8]In a related inquiry, the Supreme Court has stated: "That the *Strickland* test 'of necessity requires a case-by-case examination of the evidence,' obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established' by this Court" for purposes of determining what constitutes clearly established federal law, as determined by the Supreme Court. *Williams*, 529 U.S. at 391 (citation omitted) (referencing the standard set for habeas petitions by 28 U.S.C. § 2254(d)(1) and quoting from Justice Kennedy's concurrence in *Wright*); *see also Fields v. Brown*, 431 F.3d 1186, 1196 (9th Cir. 2005) (stating that court does "not require the existence of a case for *Teague* purposes 'involving identical facts, circumstances, and legal issues' " as that before the court in order to acknowledge that a particular holding was already dictated by precedent) (citation omitted).

### B.   Tanner's Ineffective Assistance Claim Fails on the Merits

According to Tanner, a rational defendant in his position would have wished to appeal his conviction and/or sentence based on the following grounds: (1) that the imposition of two life sentences without possibility of parole constituted cruel and unusual punishment; (2) that his presentence report ("PSR") contained inaccuracies that prejudiced Tanner at sentencing; (3) that Tanner's plea was not voluntary due to his mental health and substance abuse problems; and (4) that Nevada Revised Statutes §§ 193.165, 200.010, and 200.030 are unconstitutional.

We conclude, however, that none of Tanner's contentions qualifies as a nonfrivolous ground for appeal. *See George v. City of Morro Bay (In re George)*, 322 F.3d 586, 591 (9th Cir. 2003) ("An appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit.") (internal quotation marks and citation omitted). As a result, Tanner has failed to show that his counsel had a constitutional duty to consult with him regarding an appeal.[9]

### 1.   Eighth Amendment claim

[7] Tanner contends that a sentence of two consecutive terms of life without parole violates the Eighth Amendment bar on sentences that are grossly disproportionate to the crime

---

[9]In *Flores-Ortega*, 528 U.S. at 480, the Supreme Court stated that the existence of nonfrivolous grounds for appeal is but one example of a situation when there is reason to think a rational defendant would desire an appeal. Thus, there may be circumstances when a court finds there was reason to think that a rational defendant would have wanted to appeal, even without a showing by the defendant that nonfrivolous grounds for appeal existed. In this case, we focus solely on the viability of Tanner's proposed grounds for appeal because Tanner advanced no other bases for thinking that a rational defendant in his position would have wanted to appeal.

of conviction. Tanner's argument thus must be that a sentence of life without parole is a grossly disproportionate sentence for first degree murder, his crime of conviction. It is clear beyond argument, however, that the sentence Tanner received for murder and for the use of a deadly weapon in its commission would not be deemed cruel and unusual by any court in the United States. *Cf. Tison v. Arizona*, 481 U.S. 137, 158 (1987); *Solem v. Helm*, 463 U.S. 277, 289-90 & n.15, 292 (1983). Therefore, the result of Tanner's Eighth Amendment claim is obvious and it does not qualify as a nonfrivolous ground for appeal.

### 2. *Accuracy of the presentence report*

**[8]** The state notes that Tanner did not object to the accuracy of the presentence report, and argues that a rational defendant would not want to appeal an unpreserved issue. The State is incorrect because Nevada courts review unpreserved issues for plain error. *See* Nev. Rev. Stat. § 178.602 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Therefore, a rational defendant would want to appeal, even under a plain error standard, if he had a nonfrivolous ground for disputing the accuracy of the presentence report. Tanner, however, has failed to specify any particular inaccuracies in the report, and so it is impossible to conclude that this would have been a viable and non-frivolous ground for appeal.

### 3. *Voluntariness of plea*

Tanner argues that a rational defendant in his position would have wished to appeal the voluntariness of his plea based on the lack of a competent psychological evaluation, Tanner's depression at the time of the plea and during the crimes, and Tanner's substance abuse during the crimes.

**[9]** In Nevada, "a defendant must raise a challenge to the validity of his or her guilty plea in the district court in the first

instance, either by bringing a motion to withdraw the guilty plea, or by initiating a post-conviction proceeding . . . ." *Bryant v. State*, 721 P.2d 364, 368 (Nev. 1986) (per curiam). There are two exceptions providing for direct review: "where: (1) the error clearly appears from the record; or (2) the challenge rests on legal rather than factual allegations." *O'Guinn v. State*, 59 P.3d 488, 489-90 (Nev. 2002) (per curiam). Here, Tanner's claim would not fall within either of the exceptions, as it relies on facts outside the limited record developed in the psychiatric evaluation, change of plea hearing, and sentencing proceeding. Therefore, Tanner would have had to bring a motion to withdraw his guilty plea[10] or contest the validity of his plea in a post-conviction proceeding, rather than asserting this claim on direct appeal.

Even if Tanner could have challenged the voluntariness of his plea on appeal, his allegations do not suggest that a rational defendant in his position would have wished to do so. Tanner's main allegation is that he was suffering from depression when he pleaded guilty.[11] Tanner would have to show that his depression rendered him unable to make the decision to plead guilty freely and intelligently. *See United States v. Kaczynski*, 239 F.3d 1108, 1114 (9th Cir. 2001) ("A plea is voluntary if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.") (citation and internal quotation marks omitted). The record of the plea hearing indicates the opposite: that Tanner lucidly and voluntarily decided to plead guilty.[12] Further,

---

[10]Nevada law generally requires a motion to withdraw a guilty plea to be made before sentence is imposed; post-sentence withdrawal of the plea is authorized only to correct manifest injustice. Nev. Rev. Stat. § 176.165. Tanner has not alleged that his trial counsel should have consulted with him regarding the filing of a motion to withdraw Tanner's guilty plea.

[11]He does not explain how the psychological evaluation that he received was inadequate. As to his use of drugs, he alleges only that he used drugs at the time of his crimes, which would not be relevant to the voluntariness of the plea that he entered six months later.

[12]Tanner indicated that he understood the plea negotiations; stated that he understood the constitutional rights that he was giving up; said that his

depression alone is very unlikely to render a plea involuntary. *See Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995) ("Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that Petitioner's plea was involuntary.").

### 4. Constitutionality of Nevada Revised Statutes §§ 193.165, 200.010, and 200.030

Tanner asserts that he might have challenged the constitutionality of the Nevada statutes defining murder and malice, as well as the statute establishing an automatic sentence enhancement for use of a deadly weapon, but provided no argument in his briefs as to why these statutes might be unconstitutional. Consequently, we do not address this issue. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (court will consider "only issues which are argued specifically and distinctly in a party's opening brief") (citation and internal quotation marks omitted).

**[10]** Based on the foregoing analysis, we conclude that the district court correctly rejected Tanner's claim that his constitutional right to effective assistance of counsel was violated.

## II.  Knowing and Voluntary Guilty Plea

Tanner argues that the state trial court violated his constitutional rights by accepting his guilty plea and sentencing him

counsel had done "everything I've asked and filled me in pretty much . . . on the cases and the consequences;" said that he had slept the night before, and that his anti-depressant was not making him feel tired or sluggish; said that he understood the range of possible punishment; and coherently described how and why he came to kill his wife. Tanner's counsel stated that he had discussed possible defenses such as accident or diminished capacity with Tanner but that Tanner had "decided to enter a guilty plea because he does not want to put the family of the victims through a trial." Tanner agreed that he had discussed possible defenses with his counsel.

without advising him of his right to an appeal. According to Tanner, a trial court must inform a pleading defendant "that, notwithstanding his guilty plea, he [is] entitled to appeal his conviction and sentence." Where, as here, the facts are undisputed, and the state court has not passed on the issue, we review de novo whether a guilty plea was voluntary and knowing. *See Lambert v. Blodgett*, 393 F.3d 943, 976-77 (9th Cir. 2004) (stating that the standard for voluntariness of a guilty plea is a question of federal law) (citing *Marshall v. Lonberger*, 459 U.S. 422, 431-32 (1983)).

[11] "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal quotation marks and citation omitted). There are a number of requirements that a plea colloquy must satisfy in order for a guilty plea to be considered voluntary and knowing. A defendant must have notice of the nature of the charges against him, including the elements of each crime. *Id.* He must understand the nature of the three critical constitutional rights that are waived by his plea: the right to a jury trial, the right to confront his accuser, and the privilege against self-incrimination. *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969). A defendant must understand the consequences of his plea, including "the range of allowable punishment that will result from his plea." *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006) (citation omitted), *cert. denied*, ___ S. Ct. ___ (2007).

[12] Tanner cites to no case holding that entry of a knowing guilty plea requires that the defendant be aware of his right to appeal after the plea is entered, and we have located none. It cannot be said that such a holding was dictated by existing precedent at the time that Tanner's conviction became final. Therefore, the rule Tanner proposes would constitute a new constitutional rule, from which Tanner could not benefit on collateral review. *Cf. Teague*, 489 U.S. at 310.

Even if there were no retroactivity problem with the rule Tanner proposes, obligating courts to advise pleading defendants of their right to appeal would not be consistent with the main purpose of the constitutional requirements surrounding guilty plea canvasses, which is to ensure that defendants are aware of the constitutional rights that they are foregoing by choosing to plead guilty, *i.e.*, that the *waiver* of rights is knowing. *See Boykin*, 395 U.S. at 243-44; *see also Brady v. United States*, 397 U.S. 742, 748 (1970) (describing guilty pleas as "[w]aivers of constitutional rights [that] not only must be voluntary but must be knowing, intelligent acts"). Tanner is arguing that the judge should have informed him of the appeal rights that he *retained*—i.e. of rights that he continued to possess despite his plea. The constitutional safeguards surrounding the entry of a guilty plea are not meant to ensure that a defendant is aware of all the rights he possesses going forward after the plea, but to ensure that the defendant does not lightly relinquish his rights pursuant to the plea.

## III. Evidentiary Hearing

**[13]** We review a district court's denial of an evidentiary hearing on a habeas petition for abuse of discretion. *Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 2295 (2006). Because all of Tanner's claims lack merit, there is no need for an evidentiary hearing in this case. The district court did not abuse its discretion in refusing to grant one.

### CONCLUSION

We hold that *Flores-Ortega*, in describing defense counsel's duty to consult with the client when there is reason to believe that a rational defendant in the client's position would wish to appeal, did not establish a new rule of constitutional law. Applying the *Flores-Ortega* standard, we conclude that Tanner has not shown that his counsel was deficient in failing to consult with him regarding an appeal. Further, we conclude

that Tanner's plea was voluntary and knowing, and that he was not entitled to an evidentiary hearing on either his ineffectiveness claim or his challenge to his guilty plea. As a result, the district court correctly denied Tanner's habeas petition.

**AFFIRMED.**