FILED

DEC 14 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10376 |
| Plaintiff - Appellee, | D.C. No. 5:08-cr-00627-JW-1 |
| v. | |
| IGNACIO GALVAN-BENAVIDES, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted September 9, 2010
San Francisco, California

Before: B. FLETCHER, TALLMAN and RAWLINSON, Circuit Judges.

Ignacio Galvan-Benavides appeals his conviction and sentence for reentry of

removed aliens, 8 U.S.C. § 1326. We have jurisdiction pursuant to 28 U.S.C. §

1291, and we affirm.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Galvan-Benavides first argues that he was denied his Sixth Amendment right to counsel when the district court denied his motion to appoint new counsel for him due to the irreconcilable breakdown of the attorney-client relationship.

At the ex parte hearing on the motion, the district court inquired of both Galvan-Benavides and his counsel about the nature of the conflict. The district court asked specific and targeted questions and received detailed answers. Galvan-Benavides expressed frustration with counsel's alleged lack of interest in his case and with her failure to relay to the court his request to be transported to unrelated state judicial proceedings before a different court regarding his son. Galvan-Benavides also expressed concern that he would not receive credit for the time he had been detained prior to trial. Counsel responded that Galvan-Benavides had not brought this last concern to her attention and that she did not relay Galvan-Benavides's request for transportation to attend his son's proceedings because she knew that it would not be granted.

The district court confirmed that Galvan-Benavides's request to be transported for his son's proceedings would not have been granted, but urged counsel to relay to the court all requests in order to facilitate a better attorney-client relationship. The district court emphasized counsel's competence. It then concluded that there was not a complete breakdown of the relationship between

2

Galvan-Benavides and counsel and denied the motion. At the same time, the district court invited Galvan-Benavides to raise the issue again if need be. He did not do so. The district court nonetheless inquired about their relationship at the plea hearing, and Galvan-Benavides repeatedly expressed gratitude for counsel's professionalism and helpfulness.

On these facts, the district court correctly found that there was no complete collapse of the attorney-counsel relationship. *See United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir 1998). Also, the district court's inquiry was adequate to determine the extent of the breakdown and to ease Galvan-Benavides's concerns. *See United States v. Reyes-Bosque*, 596 F.3d 1017, 1033 (9th Cir. 2010), *cert. denied Ramirez-Esqueda v. United States*, --- S.Ct. ----, 2010 WL 2679050 (2010); *Moore*, 159 F.3d at 1160. Therefore, although his motion for new counsel was timely, Galvan-Benavides was not denied his Sixth Amendment right to counsel when the court denied his motion to appoint new counsel. *See Moore,* 159 F.3d at 1158-59.

Galvan-Benavides next argues that his plea was rendered involuntary by the intense emotional distress occasioned by learning, one day earlier, that his 15-year old son had been missing for two weeks. He also argues that the district court did not conduct an adequate Rule 11 inquiry. *See* Fed. R. Crim. P. 11.

3

During the change of plea hearing, Galvan-Benavides explained that he wanted to change his plea because of his family situation and his hope that he would be able to attend to family matters by pleading guilty. The district court specifically explained that Galvan-Benavides's family situation is not a defense to his crime and that he might not be able to attend to family matters after pleading guilty because he might be incarcerated. Galvan-Benavides confirmed that he understood.

The district court then questioned Galvan-Benavides at length about his ability to understand the proceedings and the rights he was giving up by pleading guilty. In response to the district court's questions, Galvan-Benavides indicated that he was satisfied with his attorney; that he was not under the influence of any medication that would affect his ability to plead guilty; that he understood the charge against him; that he understood the penalties; and that he understood he would be giving up numerous rights by electing not to take his case to trial.

Although Galvan-Benavides said that his "thinking is not very clear right now," that he did not feel that he was "able to continue with this case right now," and that he was "a bit distracted" by the news about his son, the record also shows that he had been contemplating changing his plea for at least a week. He also stated on the record that his plea was knowing and voluntary. "We attach

4

substantial weight to [such] contemporaneous on-the-record statements in assessing the voluntariness of pleas." *United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991). Furthermore, Galvan-Benavides did not raise any objections regarding his plea at sentencing, which took place some several weeks later, although by then his son was back in the custody of Child Protective Services.

The totality of the circumstances shows that the plea was entered into freely and intelligently. *See Tanner v. McDaniel*, 493 F.3d 1135, 1146 (9th Cir. 2007). The district court engaged in a thorough Rule 11 colloquy during which it advised Galvan-Benavides of all his rights, inquired at length about his reasons for entering a guilty plea, and ensured that he was lucid and that his plea was voluntary. *See* Fed. R. Crim. P. 11(b)(1), (2); *United States v. Bruce*, 976 F.2d 552, 560 (9th Cir. 1992).

Finally, Galvan-Benavides argues that his 84-month sentence was substantively unreasonable. His argument is twofold. First, he argues that the 16-level enhancement under U.S. Sentencing Guidelines Manual section 2L1.2(b)(1)(A) resulted in an unduly harsh sentence. Second, he argues that the sentence is unreasonable under the § 3553(a) factors. *See* 18 U.S.C. § 3553.

Pursuant to Sentencing Guidelines Manual section 2L1.2, a 16-point enhancement applied to Galvan-Benavides's total offense level because he was

previously deported after "a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months . . . ." U.S.S.G. § 2L1.2(b)(1)(A)(i). The enhancement applied because Galvan-Benavides had a 1995 felony conviction for possession for sale of cocaine base, for which he received a five-year prison term.

The 16-level enhancement does not result in "double counting." Rather, the prior drug trafficking conviction simply establishes the offense level and the criminal history category. *United States v. Garcia-Cardenas*, 555 F.3d 1049, 1050 (9th Cir. 2009), *cert. denied Garcia-Cardenas v. United States*, 130 S. Ct. 315 (2009). Also, the district court properly considered the nature of the prior conviction under § 3553(a) and not the Guidelines. *See United States v. Amezcua*, 567 F.3d 1050, 1055-56 (9th Cir. 2009).

In deciding on the sentence, the court stated that Galvan-Benavides's extensive criminal history—which included eight deportations, three of which occurred in a six-day period in July 2006, and two convictions for illegal reentry—was an aggravating factor. On the mitigating side, the court acknowledged the small quantity of drugs involved in the 1995 drug trafficking conviction. The court then decided that sentencing at the low end of the

Guidelines range appropriately reflects the mitigating factor and sentenced him to 84 months.

It is possible that a different court might have weighed more favorably Galvan-Benavides's personal history and characteristics—especially that he returned to the United States to reunite with his American family and obtain reunification with his three youngest sons, who were in foster care. But where, as here, the district court specifically considered the § 3553(a) factors and sentenced Galvan-Benavides at the low end of the Guidelines in recognition of the small quantity of drugs involved in his drug trafficking conviction, we cannot say that the district court abused its discretion or that the sentence was unreasonable. *See United States v. Carty*, 520 F.3d 984, 993 (9th Cir 2008), *cert. denied Zavala v. United States*, 553 U.S. 1061 (2008).

AFFIRMED.

09-10376 USA v. Galvan-Benavides



FILED

DEC 14 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Judge Rawlinson concurs in the result.