**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 05-8115

GREGORY E. GRAHAM, a/k/a
Godfather, a/k/a G, a/k/a Big Sexy,

Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 05-CR-78-J)**

---

David L. Serelson, Cheyenne, Wyoming, for Defendant-Appellant.

David A. Kubichek, Assistant United States Attorney (Matthew H. Mead, United States
Attorney, with him on the brief), Casper, Wyoming, for Plaintiff-Appellee.

---

Before **HARTZ**, **McWILLIAMS**, and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

The principal issue in this case is whether a mistake in the Presentence
Report, to which the defendant objected but which was not corrected by the
district court, requires reversal of a sentence predicated on a plea agreement
stipulating to a determinate sentence of twenty-five years. We AFFIRM.

# I. FACTUAL BACKGROUND

On January 10, 2005, Gregory Graham sold approximately seven grams of crack cocaine to a government informant. This transaction was part of a larger drug operation centered around the Cheyenne, Wyoming home of John Henry Wilson. According to government informants, Mr. Graham would regularly obtain wholesale quantities of cocaine and crack cocaine in Denver and transport them to Cheyenne for sale at Mr. Wilson's home. In July 2005, Mr. Graham and several others were charged by superceding indictment with conspiracy to possess and distribute more than 1.5 kilograms of cocaine base (count 1), and Mr. Graham was also charged with distribution of 7.1 grams of cocaine base (count 5).

After six days of trial, encompassing nearly all the government's case-in-chief, several defendants, including Mr. Graham, decided to plead guilty. The accompanying plea agreements were oral rather than written. Under the terms of his agreement, Mr. Graham pleaded guilty to the distribution charge, waived his right to appeal, and stipulated to a twenty-five year sentence. *See* Fed. R. Crim. P. 11(c)(1)(C). Mr. Graham admitted only to distribution of the 7.1 grams charged in the distribution count. Unlike one of his co-defendants, Mr. Graham did not admit to the 1.5 kilograms charged in the conspiracy count. As its part of the bargain, the government agreed to dismiss the conspiracy charge at sentencing.

During the plea colloquy, the court informed Mr. Graham of the potential sentences under counts one and five, of the terms of his plea agreement, including the waiver of his right to appeal, and of the fact that the court would be bound to sentence him to twenty-five years incarceration if it accepted the plea agreement. The court also explained that it would postpone ruling on the plea agreement until after it reviewed the Pre-Sentence Report ("PSR"). Mr. Graham stated that he understood all of this. The court then explained that, by entering the plea bargain, Mr. Graham would waive his right to a jury trial and the privilege against self-incrimination. Further, the court explained the elements and nature of the crime to which Mr. Graham would be pleading, specifically noting that he would be admitting distribution of "approximately 7.1 grams of a mixture or substance containing a detectable amount of cocaine base . . . ." R. Vol. XI, at 13. Mr. Graham stated that he understood these facts and entered his plea of guilty. Upon questioning from the court, Mr. Graham agreed that he entered the plea voluntarily and that he had consulted with his attorney. The court accepted the plea but reserved acceptance of the plea agreement until sentencing. The trial continued as to only one of the original co-defendants, who was convicted of conspiracy to distribute in excess of 1.5 kilograms of cocaine base, and sentenced to 300 months incarceration.

The PSR, completed on October 19, 2005, calculated Mr. Graham's offense level at thirty-eight, a score predicated on relevant conduct involving 22.27

kilograms of crack cocaine (a number that took into account all of Mr. Graham's dealings with the conspiracy, as reported by government informants), a two-level enhancement for possession of a firearm, and a two-level reduction for acceptance of responsibility. Combined with his criminal history category of III, this qualified Mr. Graham for a sentencing range of 292-365 months. In addition, the PSR erroneously reported the details of the oral plea agreement, stating that "defendant would plead guilty to Count 5 of the Superceding Indictment; relevant conduct involved at least 1.5 kilograms of cocaine base . . . ." R. Vol. XIV, at 4–5.

Mr. Graham responded to the PSR on October 28, 2005, pointing out that he had not admitted to relevant conduct involving at least 1.5 kilograms of cocaine base but only to relevant conduct involving 7.1 grams. Mr. Graham also objected to the two-level firearm enhancement and asserted that his criminal history score overstated his criminal conduct. Lastly, Mr. Graham stated his wish to withdraw his guilty plea and offered three reasons for wanting to do so: first, Ernest Daniels, a government informant who had not been called at trial, had recanted his statements regarding Mr. Graham's involvement in the conspiracy; second, Mr. Graham felt that the twenty-five year sentence was unreasonable given his prior record and familial responsibilities; and, third, at the time of accepting his plea, Mr. Graham had been surprised by the mid-trial pleas of his codefendants and had only a short time to consider the offer.

Sentencing occurred on November 1, 2005. Mr. Graham renewed his objections to the PSR and moved to withdraw his guilty plea. At various points during the hearing, Mr. Graham also expressed confusion about the plea he had entered and dismay at the length of his sentence. The court denied Mr. Graham's motion. First, the court noted that Mr. Daniels's retraction was likely motivated by his anger at the government for not delivering on a sentencing promise and that Mr. Daniels had provided no testimony at Mr. Graham's trial. Second, the court observed that in the continued trial of the codefendant who had chosen not to plead, the jury determined, beyond a reasonable doubt, that more than four kilograms of crack cocaine were involved in this case. Third, crediting the PSR's erroneous report of Mr. Graham's stipulation, the court reasoned that:

> the Plea Agreement in this matter was at least 1.5 kilograms. The defendant doesn't hesitate to attempt to back out of that Plea Agreement in terms of drug quantity, but . . . he's either committed to it by his own admission as part of the Plea Agreement or not for purposes of relevant conduct.

R. Vol. XII, at 12; *see also id.* at 18. Fourth, the court found that Mr. Graham's familial role did not greatly bolster his request, given that the Sentencing Guidelines disfavor such considerations. Fifth, the court rejected Mr. Graham's assertion that the plea bargain unfolded too quickly for him to give it adequate consideration; instead, the court found that his plea was the last to be taken and that he had "substantial time . . . to consider his situation." *Id.* at 13. Indeed, the court noted that Mr. Graham entered his plea bargain only after he had a chance

to hear nearly all of the case against him, which put him "probably in the best position he would ever be in to make an assessment as to whether to take the deal that was offered by the government in this case." *Id.* at 15–16.

The district court also rejected Mr. Graham's objection to his criminal history score, noted that the binding plea sentence fell within—and was at the lower end of—the 292–365 month range determined in the PSR, and accepted the plea agreement. The court found that "the sentence imposed is the most reasonable sentence upon consideration of all factors enumerated under [18 U.S.C. § 3553] and the binding Plea Agreement under [Fed. R. Crim. Pro. 11(c)(1)(C)]" and noted that "the same sentence would be imposed even if the advisory guideline range was determined to be improperly calculated." *Id.* at 32.

Mr. Graham timely appealed.[1]

## II. DISCUSSION

A. Motion to Withdraw the Plea Agreement

Mr. Graham argues that the district court abused its discretion in rejecting his motion to withdraw his guilty plea. Federal Rule of Criminal Procedure 11(d) governs the withdrawal of guilty pleas and states:

A defendant may withdraw a plea of guilty or nolo contendere:

---

[1] On April 10, 2006, Mr. Graham's attorney filed a brief on his client's behalf. Mr. Graham, believing that this brief did not adequately present his claims, filed a motion to supplement. We granted that motion and consider both the arguments presented in the initial brief and those in the *pro se* supplemental brief.

> (1) before the court accepts the plea, for any reason or no reason; or
> (2) after the court accepts the plea, but before it imposes sentence if:
>> (A) the court rejects the plea agreement under Rule 11(c)(5); or
>> (B) the defendant can show a fair and just reason for requesting the withdrawal.

Because the district court accepted Mr. Graham's guilty plea at the August 23, 2005, hearing, his request falls under subdivision (d)(2)(B) of Rule 11. *See United States v. Hyde*, 520 U.S. 670, 671 (1997). This Court determines whether a defendant can show "a fair and just reason" under this provision by reference to seven factors, and we review the district court's denial of the motion to withdraw under an abuse of discretion standard. *See United States v. Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005) (en banc). Since all factors cut against the Defendant, we find that the district court did not abuse its discretion.

1. *Whether the defendant has asserted his innocence*. Mr. Graham does not claim to be innocent of the distribution charge for which he was convicted. Rather, he argues that he has asserted innocence as to the erroneous relevant conduct stipulation in the PSR. The mistake in the PSR, however, is a separate issue. The question here is whether the Defendant claims innocence as to the charge to which he pleaded. He does not, and this factor thus weighs against allowing withdrawal. *See, e.g.*, *United States v. Siedlik*, 231 F.3d 744, 749 (10th Cir. 2000).

2. *Whether withdrawal would prejudice the government.*  Mr. Graham asserts that the government, at the sentencing hearing, "made no showing of any prejudice that would result" from granting his motion.  Brief for Defendant-Appellant at 5.  Withdrawal of the plea, however, would require the government to prepare and try anew a case it had substantially completed when Mr. Graham entered his guilty plea.  As such, this factor cuts against withdrawal.  *See Siedlik*, 231 F.3d at 749 ("[W]ithdrawal likely would prejudice the government by forcing it to undergo much of the same process it already has completed."); *United States v. Jones*, 168 F.3d 1217, 1220 (10th Cir. 1999); *United States v. Carr*, 80 F.3d 413, 420 (10th Cir. 1996).

3. *Whether defendant delayed in filing his motion to withdraw, and if so, the reason for the delay.*  Mr. Graham first signaled his desire to withdraw his plea on October 28, 2005, about two months after he entered the plea and three days before his sentencing hearing.  He argues that this delay was attributable to the late-breaking discovery of Mr. Daniels's recantation and to the fact that he was incarcerated at some distance from his counsel.  Mr. Daniels, however, did not appear as a witness at trial.  Accordingly, his recantation could have had little effect on Mr. Graham's prospects at trial, and thus does not furnish a sufficient reason for the delay.  As for Mr. Graham's incarceration at a distance from his counsel, this is not an uncommon situation and is not one, absent further explanation, that excuses such a lengthy delay.  It seems that the true reason for

-8-

Mr. Graham's motion is a change of heart about the sentence he faces under the bargain. Such a shift, while understandable, is not an excuse for delay. This factor weighs against the defendant. *See Siedlik*, 231 at 749–50; *Carr*, 80 F.3d at 420 ("[I]f the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerab[le] . . . force.") (quoting *United States v. Vidakovich*, 911 F.2d 435, 439–40 (10th Cir. 1990) (alterations and omissions in original).

4. *Whether withdrawal would substantially inconvenience the court.* Mr. Graham argues that because the August 2005 trial would have proceeded with or without him, and because he could be ready for a new trial on short notice, withdrawal of his plea would not cause great inconvenience to the court. If Mr. Graham were allowed to withdraw his plea, however, the district court would have to set aside time for a new trial—an obvious inconvenience. *See Siedlik*, 231 F.3d at 750; *Jones*, 168 F.3d at 1220. The district court has already expended significant resources in trying this Defendant, and it was his choice to opt out of that process after assessing the near entirety of the case against him. This factor weighs against allowing withdrawal.

5. *Whether close assistance of counsel was available to the Defendant.* In the brief filed by his attorney, Mr. Graham asserts that although he had assistance of counsel, he was surprised by his co-defendants' plea bargains and had only a

few hours to decide whether to accept a plea bargain or continue with trial. Despite this short time period, Mr. Graham's lawyer advised him to plead guilty after having had the opportunity to test the government's case throughout the trial. As the district court noted, when he made his plea, Mr. Graham was in "probably the best position he would ever be in to make an assessment" of whether to plead guilty. R. Vol. XII, at 15–16. It thus appears that Mr. Graham benefitted from the close and informed assistance of counsel before choosing his path.

In his supplemental filing, Mr. Graham argues that his attorney never advised him of the rights he was relinquishing by pleading guilty. Whether or not this assertion is true, during the plea colloquy the district court very thoroughly catalogued the implications of entering a plea of guilty and Mr. Graham stated that he understood the waivers attendant to such a plea. *See* R. Vol. XI, at 11–13. Thus, this factor also weighs against allowing withdrawal.

6. *Whether the plea was knowing and voluntary*. Mr. Graham argues that the lack of a written plea agreement and the pressure of a last-minute plea deal by his codefendants affected the knowing and voluntary nature of his plea. As demonstrated by the confusion in this case, oral plea agreements are far from ideal; but they are valid. *See e.g., United States v. Gardner*, 417 F.3d 541, 544–45 (6th Cir. 2005); *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003). And though he now professes contrary notions, Mr. Graham participated in a Rule

11 colloquy that leaves little doubt that his plea was knowing and voluntary. The court carefully explained the charges Mr. Graham faced at trial, the terms of the proposed agreement, and the rights he would relinquish by entering the agreement. Mr. Graham stated that he understood everything the court had explained to him. This factor thus weighs against allowing withdrawal. *See*, *e.g.*, *United States v. Gordon*, 4 F.3d 1567, 1573 (10th Cir. 1993) (knowing and voluntary plea taken in compliance with Rule 11 weighs against motion to withdraw).

7. *Whether the withdrawal would waste judicial resources*. This factor triggers similar concerns as those raised under the "inconvenience to the court" factor and weighs against allowing withdrawal for the same reasons.

B. Error as to the Terms of the Bargain

At various points in his *pro se* supplemental brief, Mr. Graham objects to the district court's reliance on the PSR's erroneous assertion that he had agreed in his plea bargain to relevant conduct involving 1.5 kilograms of cocaine base rather than 7.1 grams. To be sure, the district court committed error here, and the fact that Mr. Graham's repeated objections prompted neither the probation officer, nor the prosecutor, nor the court to check the transcript and correct this mistake is disturbing. Indeed, if the error in the PSR had been determinative of Mr. Graham's sentence, we would reverse and remand for resentencing. But that is not the case here. Mr. Graham entered into a Rule 11(c)(1)(C) plea bargain, in

which he agreed to a stipulated sentence of twenty-five years. Such a stipulation "binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). The court thus did not use the PSR to calculate a specific sentence, but rather as one data point among several in determining whether to accept the plea agreement.

Mr. Graham correctly points out that the district court reserved accepting the plea agreement pending review of the PSR. And at the sentencing hearing, the district court credited the erroneous 1.5 kilogram stipulation as one factor in favor of rejecting Mr. Graham's motion and accepting the plea agreement. If these were the only facts before us, we might be inclined to remand for reconsideration based on a corrected PSR. But the transcript of the sentencing hearing convinces us that the court relied on several additional factors in accepting this plea agreement and that a corrected PSR would not have made a difference in the outcome of this case. First, the district court had before it a trial's worth of evidence regarding Mr. Graham's involvement in this drug conspiracy. *See* R. Vol. XII, at 11. Second, the court noted that the jury in the continued trial of Mr. Graham's co-defendant found, beyond a reasonable doubt, that the conspiracy involved 4.7 kilograms of cocaine base. *See id.* at 11, 15, 18. Third, the court had before it the fact that Mr. Graham agreed to this sentence after evaluating the near totality of evidence amassed against him by the government. Last, and most importantly, the court stated that "the same sentence

would be imposed even if the advisory guideline range was determined to be improperly calculated." *Id.* at 32. Under these circumstances, we find the error harmless.

C. Remaining Claims

Mr. Graham raises several other claims that merit but brief discussion. First, he argues that his attorney provided ineffective assistance of counsel by advising him to agree to a plea bargain. Any such claim is more appropriate for review on habeas. *See Gordon*, 4 F.3d at 1570 (nothing that, aside from "rare instances," the "preferred avenue for challenging the effectiveness of counsel in a federal criminal case [is] via collateral attack").

Second, Mr. Graham argues that he did not enter his plea knowingly and voluntarily. As we have detailed above, the record of the meticulous Rule 11 colloquy in this case rebuts this argument. The district court fully informed Mr. Graham of the terms of the charges to which he was pleading, of the rights he would give up by pleading, and of the terms of the plea bargain into which he was about to enter. Mr. Graham stated that he understood each of these warnings and freely entered his plea.

Third, Mr. Graham argues that his sentence issued in violation of *United States v. Booker*, 543 U.S. 220 (2005), which held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict

must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244. *Booker*, however, is not implicated where the district court accepts a stipulated sentence under a Rule 11(c)(1)(C) plea bargain. *See United States v. Silva*, 413 F.3d 1283, 1284 (10th Cir. 2005) ("[N]othing in *Booker* undermines the validity of sentences imposed under Rule 11(c)(1)(C).").

Fourth, Mr. Graham argues that the criminal history points reflected in the PSR were uncounseled misdemeanor pleas and thus could not be used to enhance his sentence. Again, we note that the PSR was not used to calculate a sentence, but only as one data point in deciding whether the stipulated sentence in this plea bargain should be accepted. We therefore need not reach this argument.

Fifth, Mr. Graham argues that the district court ran afoul of Rule 32(i)(3) by not specifically ruling on a disputed matter in the PSR, namely, the erroneously reported 1.5 kilogram stipulation. According to the Rule, "[a]t sentencing, the court . . . must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . ." Fed. R. Crim. P. 32(i)(3)(B). While the court did not explicitly rule on the objection to the error, it did find that "the same sentence would be imposed even if the advisory guideline range was determined to be improperly calculated." R. Vol. XII, at 32. In other

words, a "ruling [wa]s unnecessary . . . because the matter [would] not affect sentencing . . . . Fed. R. Crim. P. 32(i)(3)(B).

As to the other claims raised by Mr. Graham in his supplemental filing, we have considered them and find them to be without merit. Therefore, we **AFFIRM** the judgment of the district court.