**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

DERRICK LOFTIS,
            *Petitioner-Appellant*,

v.

VICTOR ALMAGER, Warden
         *Respondent-Appellee.*

</td><td>

No. 09-16884

D.C. No.
1:07-cv-010603-
JAH-LSP

OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Eastern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
February 16, 2012—San Francisco, California

Filed December 11, 2012

Before: A. Wallace Tashima and Barry G. Silverman,
Circuit Judges, and Lynn S. Adelman,* District Judge.

Opinion by Judge Adelman;
Concurrence by Judge Silverman;
Dissent by Judge Tashima

---

* The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition challenging a no contest plea to second degree murder that petitioner alleged was not knowing and voluntary.

Judge Adelman wrote that, although Federal Rule of Criminal Procedure 11 and its state analogs require that a plea be supported by a factual basis, the state trial court's failure to find one for Loftis's plea–unaccompanied by protestations of innocence–did not present a constitutional issue cognizable under § 2254. In this case, petitioner's plea was not made under *Alford* or a state analog that would trigger a factual basis requirement.

Judge Silverman concurred only in the result. He agreed with Judge Tashima that a factual basis is required for an *Alford* plea or the no contest plea entered in this case pursuant to *People v. West*, 477 P.2d 409 (Cal. 1970) (California's *Alford* analog). If a trial court fails to establish a factual basis, Judge Silverman would look to a pre-sentence report prepared by the probation department to see whether the error was harmless. Here, the answer is yes because the report contains facts to support the plea. Judge Silverman next would determine whether the facts set forth in the probation report establish a factual basis for the plea under California law, and would conclude that they did in this case.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Tashima dissented because Loftis's *West* plea was tantamount to a claim of innocence, and the trial court thus violated clearly established federal law when it failed to identify any factual basis for the plea. Judge Tashima would hold that this error had a substantial and injurious effect on the proceedings because nothing in the record suggests that Loftis acted with knowledge that he was endangering human life.

## COUNSEL

Daniel J. Broderick, Federal Defender, Carolyn M. Wiggin, Assistant Federal Defender, Sacramento, California, for Petitioner-Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Justain P. Riley, Deputy Attorney General, Kathleen A. McKenna, Supervising Deputy Attorney General, for the Respondent-Appellee.

## OPINION

ADELMAN, District Judge:

Petitioner-Appellant Derrick Loftis seeks a writ of habeas corpus challenging his California conviction of second degree murder. The district court denied the petition, but we issued a certificate of appealability regarding whether there was a sufficient factual basis to support Loftis's no contest plea and whether his plea was knowing and voluntary. We now affirm.

## I. FACTS AND BACKGROUND

The pertinent facts, as set forth in the state appellate court's opinion, are as follows:

> On February 27, 2004, [Loftis] and Richard Banuelos received a telephone call from 15-year-old Celena V. She informed them she wanted to buy an eight-ball of crystal methamphetamine. They went to pick her up and she got into the vehicle. They drove to the Holiday Lodge, where defendant kept his bag of methamphetamine. [Loftis] and Celena were in a room alone. Celena bought the methamphetamine from defendant for $100, then she smoked and snorted some of it. [Loftis] also consumed some with her. [Loftis] and Celena had been in the room for about 45 minutes when Celena began to "get 'crazy' by freaking out, getting hot and shaking." Banuelos called and asked [Loftis] if they were ready to go. Banuelos arrived and the three of them left together. They went to [Loftis's] residence and Banuelos gave Celena some milk.

> Leslie Saiz arrived at the residence. [Loftis] wanted to go to the Palace casino to look for his girlfriend. Although Celena had not improved, [Loftis] did not take her to the hospital just down the street because "it never crossed his mind." Instead, the four of them got in the vehicle and drove toward the Palace. [Loftis] noticed Celena was not

breathing. He shook her and told the others he wanted to take her to the hospital, but Saiz said ["N]o, ... she was [dead."] They had decided not to seek medical care because they feared going to jail. They stopped on a gravel road and Saiz and Banuelos took Celena out of the car, laid her on the ground and covered her with tumbleweeds. [Loftis] did not get out because he was feeling too sick to move. They drove on to the Palace to meet [Loftis's] girlfriend.

Once at the Palace, [Loftis] played slot machines and met up with his girlfriend. They went home and [Loftis] was sick the whole day and night. [Loftis] thought the methamphetamine must have been bad since he also got sick.

The following night, Celena's parents filed a missing person report. About a month later, Celena's body was found and a few days after that [Loftis] was interviewed. He first denied any involvement in Celena's death, then stated she had overdosed. He then gave the preceding account.

*People v. Loftis*, No. F050676, 2007 WL 1248492, at *1 (Cal. Ct. App. May 1, 2007).

Initially charged with murder in the death of Celina V., along with four other counts, Loftis later agreed to plead no contest to second degree murder in exchange for dismissal of the other charges. The state trial court conducted a thorough

plea colloquy, ensuring that Loftis understood the nature of the charges, the penalties he faced and the rights he was relinquishing. The following exchange then occurred:

> "THE COURT: Factual basis.
>
> "[DEFENSE COUNSEL]: Your Honor, pursuant to People versus West [(1970) 3 Cal. 3d 595, defendant] is entering this plea to avoid the possibility of being convicted of first degree murder.
>
> "THE COURT: Is that correct, [Prosecutor]?
>
> "[PROSECUTOR]: That is correct, it's People versus West.
>
> "THE COURT: Okay. The Court will accept, will be willing to accept it pursuant to People versus West.

*Id.* at *3. The trial court then verified that Loftis understood his no contest plea and accepted it. At no point did Loftis proclaim his innocence or otherwise protest. The trial court later sentenced Loftis to 15 years to life in prison.

Loftis appealed, arguing that the trial court failed to establish a factual basis for his no contest plea. Specifically, he argued that the record failed to present such a basis because there was no evidence that he intended to kill Celena and no evidence that he engaged in an inherently dangerous felony when he sold the methamphetamine to Celena. The state appellate court agreed that a factual basis was necessary as a matter of California law but found that any error was

harmless because the record contained facts supporting a finding that Loftis knew that his failure to seek medical care for Celena placed her life in danger and, therefore, constituted "implied malice murder" under California law. The California Supreme Court denied Loftis's petition for review.

## II. DISCUSSION

It is axiomatic that habeas relief lies only for violations of the Constitution, laws, or treaties of the United States; errors of state law will not suffice. *E.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Consequently, we must determine whether Loftis's factual basis claim raises a federal constitutional issue.

The Constitution requires that a plea be knowing, intelligent, and voluntary. *E.g.*, *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). The record must show that the defendant voluntarily relinquished his privilege against self-incrimination, his right to trial by jury and his right to confront his accusers, *e.g.*, *United States v. Escamilla-Rojas*, 640 F.3d 1055, 1062 (9th Cir. 2011), *cert. denied*, 81 U.S.L.W. 3161 (U.S. Oct. 1, 2012), and that he understood the nature of the charges and the consequences of his plea, *e.g.*, *Tanner v. McDaniel*, 493 F.3d 1135, 1146–47 (9th Cir. 2007); *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006).

Beyond these essentials, the Constitution "does not impose strict requirements on the mechanics of plea proceedings." *Escamilla-Rojas*, 640 F.3d at 1062 (citing *Brady v. United States*, 397 U.S. 742, 747 n.4 (1970)). While Fed. R. Crim. P. 11 and its state analogs require additional safeguards, violations of such rules do not ordinarily render

a plea constitutionally infirm and thus vulnerable to collateral attack. *See, e.g.*, *United States v. Timmreck*, 441 U.S. 780, 783–84 (1979); *see also Estelle*, 502 U.S. at 68 n.2.

Among the requirements imposed on trial judges by rule – but not the Constitution – is the finding of a factual basis. *See, e.g.*, *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("Putting a factual basis for the plea on the record has become familiar as a result of statutes and rules, not as a result of constitutional compulsion."). Accordingly, habeas courts have held that, unless a plea is accompanied by protestations of innocence or other "special circumstances," the Constitution does not require state judges to find a factual basis. *E.g.*, *Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir. 1985); *see also Meyers v. Gillis*, 93 F.3d 1147, 1151 (3d Cir. 1996) ("Put simply, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require an on-the-record development of the factual basis supporting a guilty plea before entry of the plea, and the failure of a state court to elicit a factual basis before accepting a guilty plea does not in itself provide a ground for habeas corpus relief under 28 U.S.C. § 2254."). *Cf. Willett v. State of Ga.*, 608 F.2d 538, 540 (5th Cir. 1979) (holding that under *North Carolina v. Alford*, 400 U.S. 25 (1970), "when a defendant pleads guilty while claiming his or her innocence, the court commits constitutional error in accepting the plea unless the plea is shown to have a factual basis").

Loftis cannot obtain habeas relief because the state trial court's failure to find a factual basis for his no contest plea – unaccompanied by protestations of innocence – does not present a constitutional issue cognizable under 28 U.S.C. § 2254. *See, e.g.*, *Bonior v. Conerly*, 416 Fed. App'x 475, 476 (6th Cir. 2010) (holding that a prisoner's claim that there

was an insufficient factual basis to support his no contest plea to lesser charges was not cognizable in federal habeas corpus); *Green v. Koerner*, 312 Fed. App'x 105, 108 (10th Cir. 2009) (holding that a prisoner's claim that the state court lacked a factual basis to support a no contest plea did not, by itself, present a basis to invalidate her plea in a federal habeas corpus action); *Foote v. Ward*, 207 Fed. App'x 927, 930 (10th Cir. 2006) (holding that only if the defendant claims innocence does he obtain the added protection of *Alford*); *Kirk v. Cline*, No. 09-3187-WEB, 2011 WL 5597362, at *8 (D. Kan. Nov. 17, 2011) (collecting cases and noting that the "due process clause does not require more of a factual basis or other more stringent standards for a no contest plea than a guilty plea"); *see also Post v. Bradshaw*, 621 F.3d 406, 426–27 (6th Cir. 2010) (noting that failure to find a factual basis for a no contest plea would be a violation only of state law, not cognizable in habeas), *cert. denied*, 131 S. Ct. 2902 (2011). It is therefore unnecessary to decide whether the state appellate court unreasonably determined that the record supplied an adequate factual basis for Loftis's plea.

Our cases have not endorsed the proposition that a factual basis is required for a no contest plea even when considering claims raised under Rule 11 on direct appeal. *See United States v. Mancinas-Flores*, 588 F.3d 677, 681 (9th Cir. 2009) ("The factual basis requirement does not apply to nolo pleas. *See* Fed. R. Crim. P. 11(b)(3). This is so because a defendant pleading nolo contendere takes no position on whether he committed the elements of the offense, and the court therefore has no reason to examine whether, in fact, he did."); *see also Alford*, 400 U.S. at 36 n.8 (noting that while a court may not under Rule 11 accept a guilty plea absent a factual basis, "there is no similar requirement for pleas of nolo contendere, since it was thought desirable to permit

defendants to plead nolo without making any inquiry into their actual guilt"). No one suggests that Rule 11(b)(3), which requires a factual basis for guilty pleas – but not no contest pleas – is unconstitutional.

Judges Tashima and Silverman contend that Loftis's citation to *People v. West*, 477 P.2d 409 (1970) in connection with his no contest plea was sufficient to trigger *Alford*'s factual basis requirement. It is true that we have previously said in dicta that *West* "is the California equivalent of an *Alford* plea." *Doe v. Woodford*, 508 F.3d 563, 566 (9th Cir. 2007); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 473 (2000) ("The plea was entered pursuant to a California rule permitting a defendant both to deny committing a crime and to admit that there is sufficient evidence to convict him. *See People v. West*, 3 Cal. 3d 595, 477 P.2d 409 (1970)."). However, the defendant in *Doe* pleaded guilty, 508 F.3d at 565, rather than no contest, and his primary complaint was that his plea was involuntary because he lacked sufficient time to decide, *id.* at 569–72. We did not discuss the sufficiency of the factual basis or any protestations of innocence.

In the present case, Loftis entered a plea of no contest not a traditional *Alford* plea (i.e, a plea of guilty by one who continues to claim innocence). *See Mancinas-Flores*, 588 F.3d at 681 ("An *Alford* plea differs from a nolo plea in that a defendant pleading nolo contendere takes no position on guilt or innocence, whereas a defendant entering an *Alford* plea takes the position that he is not guilty."); Stephanos Bibas, *Harmonizing Substantive-Criminal-Law Values and Criminal Procedure: the Case of Alford and Nolo Contendere Pleas*, 88 Cornell L. Rev. 1361, 1373 (2003) ("[D]efendants who plead nolo contendere simply refuse to admit guilt, while

defendants making *Alford* pleas affirmatively protest their innocence."). As Judge Tashima acknowledges, *Alford* permits the court to accept a defendant's nolo contendere plea and treat him as if he were guilty, without inquiry into his actual guilt. *See* 400 U.S. at 36 & n.8.

Analysis of *Alford*, *West* and California and Ninth Circuit cases makes clear that the citation to *West* during Loftis's plea colloquy did not transform Loftis's no contest plea into an *Alford* plea. The issue before the Supreme Court in *Alford* was whether a guilty plea from a person who claimed innocence should be accepted. The Court noted its previous decisions holding that trial courts "may impose a prison sentence after accepting a plea of nolo contendere, a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." 400 U.S. at 35. The Court stated that:

> These cases would be directly in point if Alford had simply insisted on his plea but refused to admit the crime. The fact that his plea was denominated a plea of guilty rather than a plea of nolo contendere is of no constitutional significance with respect to the issue now before us, for the Constitution is concerned with the practical consequences, not the formal categorizations, of state law. Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and

understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. Here the State had a strong case of first-degree murder against Alford. Whether he realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading. Because of the overwhelming evidence against him, a trial was precisely what neither Alford nor his attorney desired. Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term. When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the

State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it.

*Id.* at 37–38 (internal citations and footnote omitted).

While *Alford* did not explicitly hold that a factual basis was constitutionally necessary, lower federal courts have drawn from the above language the requirement that if a defendant pleads guilty while claiming innocence the trial court must find a factual basis. *See, e.g.*, *Willet*, 608 F.2d at 540. *But cf. Higgason*, 984 F.2d at 207 ("*Alford* tells us that strong evidence on the record can show that a plea is voluntary; it does not hold that *only* strong evidence on the record permits a finding of voluntariness. And it certainly does not imply that the factual-basis requirement of Fed. R. Crim. P. 11(f) and its state-law counterparts comes from the Constitution."). This requirement is based on the concern that a defendant who pleads guilty while simultaneously claiming innocence may not be acting freely and voluntarily. *See Willet*, 608 F.2d at 540 (noting the "'importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice'") (quoting *Alford*, 400 U.S. at 38 n.10). By finding a factual basis, the trial judge resolves the conflict between the waiver of trial and the claim of innocence. *See id.* When a defendant pleads guilty or no contest without claiming innocence or otherwise making statements calling into question the voluntariness of his plea, however, there is no such conflict for the trial judge to resolve, and the finding of a factual basis is not essential to voluntariness. In the present case, Loftis made no statements triggering the concerns raised in *Alford*.

Nor can a bare reference to *People v. West*, such as occurred during the plea colloquy here, carry with it an implied assertion of innocence, activating the additional protections of *Alford*. "*West* did not actually involve a claim of innocence but addressed the validity of a plea to an uncharged lesser offense entered pursuant to a plea bargain." *People v. Rauen*, 133 Cal. Rptr. 3d 732, 734 n.1 (Cal. App. 2011);[1] *see also In re Alvernaz*, 830 P.2d 747, 752 (Cal. 1992) (characterizing a *West* plea as "a plea of nolo contendere, not admitting a factual basis for the plea"). *West* approved the practice of plea bargaining to a lesser charge in order to avoid exposure to greater penalties. In this sense, *West* resembles *Alford* because the motive in *Alford* was also to avoid more serious penalties. But *West*'s focus was on validating the practice of plea bargaining generally. The decision relied in part on *Brady v. United States*, 397 U.S. 742 (1970), in which the Supreme Court approved a plea to a lesser charge motivated by the desire to avoid a higher penalty, but *West* never even mentioned *Alford*, which had come down a few weeks previous. Thus, *West* is more an analog of *Brady* than of *Alford*.

While some California cases casually refer to *West* and *Alford* pleas interchangeably, others draw a distinction. *See,*

---

[1] Judge Tashima notes that *Rauen* also said a *West* plea "allows a defendant to plead guilty in order to take advantage of a plea bargain while still asserting his or her innocence." *Id.* at 734. That a *West* plea *allows* a defendant to plead guilty while asserting innocence does not change the fact that Loftis pleaded no contest without ever making such an assertion. Further, as *Alford* noted, the Constitution is concerned with the practical consequences of the defendant's plea, not the manner in which it may be formally categorized under state law. 400 U.S. at 37. In other words, we should focus on whether Loftis's plea raised the concerns identified in *Alford* not the label California courts might place upon it.

*e.g.*, *In re Mills*, No. C066648, 2011 WL 4005394, at *4 (Cal. App. 3 Dist. Sept. 9, 2011) ("The superior court correctly found Mills entered his plea on the mistaken belief that a *West* plea allowed him to maintain his innocence; *West* did not involve a claim of innocence but instead addressed the validity of a plea to an uncharged lesser offense entered pursuant to a plea bargain."); *People v. Wampler*, No. C060649, 2010 WL 1435040, at *2 n.2 (Cal. App. 3 Dist. Apr. 12, 2010) (noting that while pleas in which the defendant continues to maintain innocence are sometimes referred to as *West* pleas, they are really *Alford* pleas). Judge Tashima correctly notes that these decisions are non-precedential. They do, however, indicate that California law does not clearly equate *West* and *Alford* such that as a federal habeas court we should extend the additional protections of *Alford* to any case in which *West* is mentioned during the plea colloquy. In any event, as discussed in note 1 above, the validity of a plea under the Constitution does not turn on how it is formally categorized under state law. *Alford*, 400 U.S. at 37. Thus, it is also irrelevant that under California law nolo pleas are treated like guilty pleas. *See* Cal. Penal Code § 1016(3).

Judge Tashima argues that even if a *West* plea is not equivalent to a claim of innocence, it at least qualifies as a "special circumstance." *Rodriguez*, 777 F.2d at 528. However, the only special circumstance we identified in *Rodriguez* was "a defendant's specific protestation of innocence, which might impose on a state court the constitutional duty to make inquiry and to determine if there is a factual basis for the plea." *Id.* Similarly, *Banks v. McGougan*, 717 F.2d 186, 188 (5th Cir.1983), the case upon which *Rodriguez* primarily relied, spoke of a situation in which "the state judge is put on notice that there may be some

need for such an inquiry (as, for example, when the accused asserts his innocence)."  We have found no case in which a federal habeas court has extended the factual basis rule of *Alford* to a situation such as in the present case where the defendant pleaded no contest without asserting innocence or making other statements about the facts which called the validity of his plea into question.

Finally, Judge Tashima contends that *United States v. Vidal*, 504 F.3d 1072 (9th Cir. 2007), supports the proposition that a defendant who pleads pursuant to *People v. West* contests factual guilt.  In *Vidal*, we considered on direct appeal whether a defendant's California conviction for driving a stolen vehicle qualified as an aggravated felony, supporting an 8-level sentencing guideline enhancement under U.S.S.G. § 2L1.2(b)(1)(C).  The defendant pled guilty in exchange for the dismissal of another count, and the description of the facts supporting the charge in his plea form stated only "*People v. West*."  *Id.* at 1075.  We held first that because the California statute at issue also applied to accessories after the fact it did not categorically describe a "generic" theft offense.  *Id.* at 1077–86.  We then concluded that under the modified categorical approach the record did not permit a finding that the defendant pled guilty to generic theft, as the plea form contained no factual basis permitting such a finding.  *Id.* at 1088–89.  In so holding, we discussed *West* pleas and noted that the "California Supreme Court subsequently characterized a *People v. West* plea as a plea of nolo contendere that does not establish factual guilt."  *Id.* at 1089.  Thus, we said that "unless the record of the plea proceeding reflects that the defendant admitted to facts, a *West* plea, without more, does not establish the requisite factual predicate to support a sentence enhancement."  *Id.*

We did not hold in *Vidal* that *West* pleas are the same as *Alford* pleas or that a factual basis is constitutionally required for a valid *West* plea. We held only that without a factual basis permitting a determination of whether the prior conviction qualified as an aggravated felony, the sentencing guideline enhancement could not be applied. Thus, *Vidal* therefore cannot bear the weight Judge Tashima places upon it.[2]

## III. CONCLUSION

Because Loftis did not enter an *Alford* plea, the state court was under no obligation, under the federal Constitution, to find a factual basis. Loftis provides no other reason to find his plea unknowing or involuntary. Accordingly, he is not entitled to habeas relief.

**AFFIRMED.**

SILVERMAN, Circuit Judge, concurring in the result:

Chief Judge Kozinski recently designated a separate opinion of his, not as a dissent or a partial concurrence, but as a "disagree[ment] with everyone." *Garfias-Rodriguez v. Holder*, — F.3d —, 2012 WL 5077137 (9th Cir. October 19, 2012). I chuckled at the time, but not any more. I now find myself in the position of agreeing with the result reached by Judge Adelman affirming the denial of a writ of habeas

---

[2] *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008), which Judge Tashima also cites, is similarly distinguishable. In *Savage*, the court declined to impose a sentence enhancement under the modified categorical approach because the defendant's *Alford* plea did not establish the requisite facts.

corpus, but *only* with the result; agreeing with the portion of Judge Tashima's dissent demonstrating the constitutional requirement of a factual basis to support a *People v. West*-type no contest plea; but ultimately disagreeing with Judge Tashima about whether there was, indeed, a factual basis in *this* case for second degree murder under California law.

I start with Judge Tashima. I agree with him that a factual basis is required for an *Alford* plea or a no contest plea entered pursuant to *People v. West*, 477 P.2d 409 (Cal. 1970), California's analogue to *Alford*. As Judge Tashima cogently shows, a court taking a no contest or *Alford*-type plea must satisfy itself that there is a factual basis to believe that the defendant is, indeed, guilty of the crime for which he will be convicted. A factual basis is constitutionally required because of the importance of protecting the innocent and assuring that the plea is the product of free and intelligent choice. *North Carolina v. Alford*, 400 U.S. 25, 38 (1970).

Here, the trial court failed to establish a factual basis at the time it accepted Loftis's no contest plea. That error gives rise to the next question: Whether a reviewing court may look to a pre-sentence report prepared by the probation department to see whether the error was harmless – that is, to ascertain whether the report contains facts that support the plea. The answer to that question is yes, and Loftis does not argue otherwise. *See United States v. Mancinas-Flores*, 588 F.3d 677, 681–83 (9th Cir. 2009); *Carty v. Nelson*, 426 F.3d 1064, 1074–75 (9th Cir. 2005). In any event, there are no clearly established United States Supreme Court decisions to the contrary.

The final question is whether the facts set forth in the probation report establish a factual basis for second degree

murder under California law. The answer to this question begins and ends with the principle that the California courts are the expositors of California law. The California courts tell *us* what California law covers; we don't tell *them*. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). In this case, the California Court of Appeal reviewed the facts set forth in the probation report and, analyzing California cases and interpreting California law, concluded that those facts would support a conviction of second-degree murder under the California Penal Code.[1]

---

[1] The Court of Appeal wrote:

California law recognizes three theories of second degree murder, one of which is implied malice murder. (*People v. Robertson* (2004) 34 Cal. 4th 156, 164 [malice is implied when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life].)

Here, the probation report contained facts supporting a finding that defendant knew the consequences of his failure to seek medical care for Celena placed her life in danger. He observed her adverse reaction and her continuing condition. He suggested taking her to the hospital and therefore recognized the seriousness of her situation. The facts also show defendant acted with conscious disregard for Celena's life. He knew she was ill and did nothing to help her. The hospital was only a short distance from his house. He and his cohorts simply took Celena along

in the vehicle when they headed to the Palace casino. When she quit breathing, defendant mentioned the hospital to his cohorts but he made no real effort to get her there. On the way to the casino, they stopped the vehicle, placed Celena's body on the roadside and covered it with tumbleweeds. When they arrived at the casino, defendant played slot machines. In sum, while Celena was experiencing a violent reaction to the methamphetamine and was obviously ailing, even when she quit breathing, defendant consciously disregarded her life-threatening condition and deprived her of medical care, knowing he was placing her life in danger.

"[T]he common law does not distinguish between homicide by act and homicide by omission." (*People v. Burden* (1977) 72 Cal. App. 3d 603, 618; see also *People v. Dellinger* (1989) 49 Cal. 3d 1212, 1220.) Passive conduct or omissions may satisfy the actus reas component of murder where the person is under a duty to act. (See *People v. Protopappas* (1988) 201 Cal. App. 3d 152, 168 [doctor's failure to assist his patient after inappropriately administering anesthesia]; *People v. Burden, supra*, at pp. 620–621 [father's failure to feed his child].) Defendant owed Celena a duty to act. He created the substantial risk by selling her the methamphetamine. He observed her serious reaction to the drug and knew she was still sick when she entered the vehicle. Once she was in the vehicle with defendant and the others, she had no other access to help. At that point, she was entirely dependent on defendant and the others for assistance. We believe these circumstances, which placed Celena in grave peril, resulted in a duty on defendant's part to act. (See, e.g., Health & Saf. Code § 11704, subd. (1) [drug dealer liability; person who knowingly participates in marketing of illegal controlled substances is liable for civil damages; person may recover damages for injury resulting from an individual's use of illegal controlled substance];

That is the end of the matter.  *Alford* requires that the record contain a factual basis for the plea, not proof beyond a reasonable doubt.  *United States v. Neel*, 547 F.2d 95, 96 (9th Cir. 1976) (per curiam).

For these reasons, I concur in affirming the district court's denial of habeas relief.

---

TASHIMA, Circuit Judge, dissenting:

I respectfully dissent.  Derrick Loftis committed a despicable act when he sold drugs to a young girl.  But that act, plus the fact that the girl later died in his presence, is insufficient to support a murder conviction.  Given the nature of Loftis' plea, the stark disconnect between the facts and the plea raises a substantial constitutional issue.  Loftis' *West* plea was tantamount to a claim of innocence, and the trial court thus violated clearly established federal law when it failed to identify any factual basis for the plea.  This error had a substantial and injurious effect on the proceedings because nothing in the record suggests that Loftis acted with

---

*Williams v. State of California* (1983) 34 Cal. 3d 18, 23 [no affirmative duty to act absent special relationship unless actor has created a situation of peril increasing risk of harm]; *McGettigan v. Bay Area Rapid Transit Dist.* (1997) 57 Cal. App. 4th 1011, 1021–1022 [same]; Rest.2d Torts §314A, comment d. [duty to protect person against unreasonable risk of harm extends to risks arising out of the actor's own conduct].)

*People v. Loftis*, 2007 WL 1248492 at *5–6  (footnote citing to CALCRIM No. 520 and CALJIC No. 8.31 omitted).

knowledge that he was endangering human life.  I would, thus, grant Loftis' habeas  petition.

# I

According to the state court probation report,[1] Loftis admitted to police that he sold crystal meth to fifteen-year-old Celena V., and that after she consumed the crystal meth she "began to get '*crazy*' by freaking out, getting hot and shaking."  Richard Banuelos gave Celena some milk.  Celena did not improve, but Loftis, Banuelos, Leslie Saiz, and Celena headed to a casino.  On the way there, Loftis noticed that Celena was not breathing, attempted to wake her up by shaking her, and told the others that he wanted to take her to a hospital, to which Saiz responded  that she was already dead.  Saiz and Banuelos then took her body out of the car and covered it with tumbleweeds.  Loftis, Banuelos, and Saiz continued on to the casino.  Celena's body was discovered about a month later.

Loftis was charged with murder, and eventually entered a plea of no contest to second-degree murder.  There was no written plea agreement, Loftis did not complete a written plea form, and the parties never stipulated to a factual basis for the plea.  When the court asked the parties to supply a factual basis for the plea at the plea colloquy, Loftis' attorney stated that Loftis was pleading "pursuant to *People versus West*."[2]

---

[1] This report, of course, was not before the court at the plea-taking.  But consistent with the state appellate court's reliance on it and the majority's reliance on it, by reference, *see* Maj. op. at 4–5, I refer to it as the most complete recounting of the facts in this case.

[2] *People v. West*, 477 P.2d 409 (Cal. 1970).

Loftis' conviction was affirmed on appeal, and the district court denied his federal habeas petition.

## II

## A

When a defendant pleads guilty, he waives "[s]everal federal constitutional rights," including "the privilege against compulsory self-incrimination[,] . . . the right to trial by jury[, and] . . . the right to confront one's accusers." *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). A waiver of these rights must be voluntary and intelligent. *Id.* at 242–43; *see also Brady v. United States*, 397 U.S. 742, 748 (1970). "Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." *Id.*

In *North Carolina v. Alford*, 400 U.S. 25 (1970), the Supreme Court held that a guilty plea accompanied by protestations of innocence may be accepted only if the judge "test[s] whether the plea was being intelligently entered" by ensuring that there is a factual basis for the pled charge. *Id.* at 38. Alford had been indicted for first-degree murder and pled guilty to second-degree murder. *Id.* at 26–27. At the plea hearing, he testified that he did not commit the murder but was pleading guilty to avoid the threat of the death penalty.[3] *Id.* at 28. Before the court accepted the guilty plea, a police officer summarized the state's case, and two other witnesses testified that "shortly before the killing Alford took his gun from his house, stated his intention to kill the victim,

---

[3] Similarly, Loftis' plea was based on "avoid[ing] the possibility of being convicted of first degree murder." Maj. op. at 6.

and returned home with the declaration that he had carried out the killing." *Id.* On appeal, Alford argued that his plea was invalid because it was the product of fear and coercion. *Id.* at 29.

The Court explained that Alford's protestation of innocence presented a potential problem, because "[o]rdinarily, a judgment of conviction resting on a plea of guilty is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered." *Id.* at 32. When Alford asserted that he was innocent, he created "a factual and legal dispute between him and the State" as to his guilt. *Id.* This was problematic because the admission of guilt is "normally 'central to the plea and the foundation for entering judgment.'" *Id.* (quoting *Brady*, 397 U.S. at 738) (internal alterations omitted). "*Without more*, it might be argued that the conviction . . . was invalid, since his assertion of innocence negatived any admission of guilt . . . ." *Id.* (emphasis added).

The "more" that made Alford's guilty plea valid was that when the plea was "viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned." 400 U.S. at 37-38 (citing *McCarthy v. United States*, 394 U.S. 459, 466-67 (1969)). The cited portion of *McCarthy* explains that Federal Rule of Criminal Procedure 11, which requires the court to determine that there is a factual basis for a guilty plea before entering judgment, "is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct

does not actually fall within the charge." *McCarthy*, 394 U.S. at 467 (internal quotation marks omitted).  Therefore, when a defendant pleads guilty, but protests his innocence, the trial court ensures that the plea is intelligent by determining that there is a factual basis for the plea.  *Alford*, 400 U.S. at 38; *see also United States v. King*, 257 F.3d 1013, 1022 (9th Cir. 2001); *United States v. Neel*, 547 F.2d 95, 96 (9th Cir. 1976).

## B

Loftis pled no contest under California law and cited *People v. West*.  This plea was sufficient to trigger the factual basis requirement under *Alford*.

## 1

The United States Supreme Court, the Ninth Circuit, and the California Supreme Court all interpret a plea pursuant to *People v. West* to mean that the defendant does not admit factual guilt but pleads to avoid a more serious punishment. *See Roe v. Flores-Ortega*, 528 U.S. 470, 473 (2000) (noting in dicta that a *People v. West* plea "permit[s] a defendant both to deny committing a crime and to admit that there is sufficient evidence to convict him"); *Doe v. Woodford*, 508 F.3d 563, 566 n.2 (9th Cir 2007) (noting that a *People v. West* plea "does not require an admission of guilt and is the California equivalent of an *Alford* plea"); *In re Alvernaz*, 830 P.2d 747, 752 (Cal. 1992) (describing a *People v. West* plea as a "plea of nolo contendere, not admitting a factual basis for the plea").

Our holding in *United States v. Vidal*, 504 F.3d 1072 (9th Cir. 2007) (en banc), is dependent on the premise that a defendant does not admit factual guilt when he pleads guilty

pursuant to *People v. West*. In that case, the defendant pled guilty to a crime, and was subject to a sentencing enhancement for a prior offense. *Id.* at 1074–75. For that prior offense, the defendant had pled guilty pursuant to *People v. West* and no recitation of the factual basis for defendant's plea appeared on the written plea and waiver of rights form. *Id.* at 1075. Instead, as in this case, "only '*People v. West*' [wa]s entered in the section that requests a description of facts supporting any charges." *Id.* The en banc court held that the record for the prior offense "fails to establish the factual predicate for [the defendant]'s plea of guilty pursuant to *People v. West*." *Id.* at 1087. This is because "unless the record of the plea proceeding reflects that the defendant admitted to facts, a *West* plea, without more, does not establish the requisite factual predicate to support a sentence enhancement." *Id.* at 1089.

These precedents establish that, when a defendant pleads guilty in California state court pursuant to *People v. West*, the trial court must ensure that the defendant's plea is intelligent by ensuring that there is a factual basis for the plea. Moreover, the California precedent cited by Judge Adelman is not to the contrary. For example, *People v. Rauen* correctly noted that "*West* did not actually involve a claim of innocence," 133 Cal. Rptr. 3d 732, 734 n.1 (Ct. App. 2011). But more importantly, that court also stated that a *West* plea, "also referred to as an *Alford* plea, based on *North Carolina v. Alford*, allows a defendant to plead guilty in order to take advantage of a plea bargain while still asserting his or her innocence." *Id*. at 734 (citation omitted).[4]

---

[4] Similarly, although the two unpublished decisions cited in Judge Adelman's opinion mention that *West* pleas are not identical to *Alford* pleas because they do not involve claims of innocence, neither decision

Judge Adelman also stresses that the defendant in *West* did not explicitly proclaim innocence, and thus concludes that a *West* plea is distinguishable from an *Alford* plea. Nothing in *Alford*, however, requires an express protestation of innocence. Indeed, the Ninth Circuit has not limited the *Alford* rule to pleas accompanied by claims of innocence, but instead has held that "the due process clause does not impose on a state court the duty to establish a factual basis for a guilty plea absent special circumstances." *Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir. 1985) (per curiam).[5] Given the uniformity of published authority equating *West* and *Alford* pleas, it is clear that, even if a *West* plea were not

---

holds that a *West* plea does not trigger *Alford*'s factual inquiry requirement. *See In re Mills*, 2011 WL 4005394, at *4 (Cal. Ct. App. 2011); *People v. Wampler*, 2010 WL 1435040, at *2 n.2 (Cal. Ct. App. 2010). Moreover, these decisions cannot inform our analysis of California law because unpublished decisions of the California intermediate appellate courts are not precedential – they cannot be relied on as authoritative pronouncements of California law. *See* Cal. Rule of Court 8.1115 ("an opinion of a California Court of Appeal . . . that is not certified for publication . . . must not be cited or relied on by a court or party in any other action").

[5] *United States v. Mancinas-Flores*, 588 F.3d 677 (9th Cir. 2009), cited by Judge Adelman, is of little relevance. *Mancinas-Flores* was a direct criminal appeal in which the defendant argued a violation of Fed. R. Crim. P. 11; it was not a habeas case brought by a state prisoner raising constitutional issues. Further, *Mancinas-Flores*' citation to the Advisory Committee's 1966 note is out of date. *Alford* was not decided until four years later, in 1970. Thus, the Advisory Committee's 1974 note, citing *Alford*, recognizes that "[a] plea of nolo contendere is, for purposes of punishment, the same as the plea of guilty." Fed. R. Crim. P. 11, advisory committee note (1974).

equivalent to a claim of innocence, it at least qualifies as such a "special circumstance."[6]

**2**

The fact that Loftis pled no contest rather than guilty does not alter the outcome.  As explained above, *Alford* requires the trial judge to ensure that there is a factual basis for a guilty plea when a defendant protests his innocence because the protest undermines the "express admission of guilt" that is "normally central to the plea and the foundation for entering judgment."  400 U.S. at 32, 37.  By contrast, the Court explained that if Alford had entered a nolo contendere plea, which "has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty," the Court could simply treat him as if he were guilty.  *Id.* at 36 & n.8, 37; *see also id.* at 37 (equating "a plea that refuses to admit commission of the criminal act" with a guilty plea accompanied by both a protestation of innocence and "strong evidence of factual guilt").  Therefore, when a defendant enters a plea that ordinarily includes an admission of guilt and simultaneously

---

[6] The Second and Fifth Circuits have also recognized that a claim of innocence is not a pre-requisite to the application of *Alford*.  Thus, the Second Circuit has noted that "[t]he distinguishing feature of an *Alford* plea is that the defendant does not confirm the factual basis of the plea." *United States v. Savage*, 542 F.3d 959, 962 (2d Cir. 2008).  And in *Banks v. McGougan*, 717 F.2d 186, 188 (5th Cir. 1983), the Fifth Circuit agreed with the holdings from five other circuits that "absent statements inconsistent with guilt, state courts are not constitutionally required to establish a factual basis for the plea of guilt."  The *Banks* court then held that inquiry is required where the state judge "is put on notice that there may be some need for such an inquiry."  *Id*.  None of these formulations of the *Alford* rule requires an express claim of innocence.

protests his innocence, the trial court may accept the plea only if it determines that there is a factual basis for the charge.

Loftis' no contest plea under *People v. West* was unlike the classic nolo contendere plea discussed in *Alford* because in California a nolo contendere plea "admits every element of the crime charged and is the legal equivalent of a verdict and is tantamount to a finding." *People v. Wallace*, 93 P.3d 1037, 1043 (Cal. 2004) (internal quotation marks and citations omitted). In California, a nolo contendere plea is the same as a guilty plea "for all purposes," and "upon a plea of nolo contendere, the court shall find the defendant guilty." Cal. Penal Code § 1016(3). When a defendant enters a nolo contendere plea, the court is required by state law to "ascertain whether the defendant completely understands that a plea of nolo contendere shall be considered the same as a plea of guilty." *Id.*

"[T]he Constitution is concerned with the practical consequences, not the formal categorizations, of state law." *Alford*, 400 U.S. at 37. In California, the practical consequences of a nolo contendere plea are identical to the practical consequences of a guilty plea. Because an ordinary California nolo contendere plea admits a factual basis for the plea, for *Alford* purposes it is the same as a guilty plea. But, by adding a citation to *People v. West* to either plea, a defendant creates a "dispute between him and the State." *Id.*

at 32.[7]    Otherwise, the defendant's express reference to *People v. West* when entering his plea becomes meaningless.

In sum, when a defendant enters a plea which, although admitting factual guilt, simultaneously protests his innocence, the trial court must ensure that the plea is intelligent by determining that there is a factual basis for the plea, regardless of the nomenclature.  Loftis entered a plea which admits factual guilt, but simultaneously protested his innocence by citing *People v. West*.  The trial court violated clearly established law under *Alford* when, under these circumstances, it failed to determine the existence of a factual basis for Loftis' plea.

## III

## A

The California Court of Appeal assumed that the trial court committed error, but determined that the error was harmless.  Even when a state court determines that an error is harmless beyond a reasonable doubt, which the state court did not do in this case, this Court "need not conduct an analysis under AEDPA of whether the state court's harmlessness determination on direct review . . . was contrary to or an unreasonable application of clearly established federal law." *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010)

---

[7] Judge Adelman's reliance on unpublished out-of-circuit decisions, *see* Maj. op. at 8–9, is also unavailing (even assuming that such decisions should be given any weight) because the nolo contendere pleas involved in those cases were not the same as and, thus, did not have the same legal significance as a *West* plea.

(citing *Fry v. Pliler*, 551 U.S. 112, 119-20 (2007)); *see also Merolillo v. Yates*, 663 F.3d 444, 454-55 (9th Cir. 2011).

Instead, when evaluating a constitutional error in a plea-taking on habeas, we ask "whether the state court's error . . . had a 'substantial and injurious effect' on [petitioner]." *Buckley*, 441 F.3d at 697 (quoting *Brecht v. Abramson*, 507 U.S. 619, 637 (1993)). When a trial court fails to ensure a factual basis for an *Alford* plea on direct appeal we ask whether there is "[s]ufficient evidence indicating guilt" and "need not convince [ourselves] of guilt beyond a reasonable doubt." *King*, 257 F.3d at 1022; *see also Neel*, 547 F.2d at 96. Accordingly, if there is insufficient evidence indicating Loftis' guilt, the failure to establish a factual basis for his plea had a substantial and injurious effect on him. *See Buckley*, 441 F.3d at 698 (holding that the error had a "substantial and injurious effect" on petitioner because it caused him to receive a longer sentence).[8]

---

[8] Judge Silverman argues that we must defer to the California Court of Appeal's harmless error analysis. This is contrary to the rule, however, that "we apply the *Brecht* test without regard for the state court's harmlessness determination." *Pulido*, 629 F.3d at 1012. This principle applies even where the harmlessness determination involves, as is often the case, the application of state law. *See, e.g., Lawson v. Borg*, 60 F.3d 608, 612 (9th Cir. 1995) (addressing de novo whether the jury's consideration of extrinsic evidence bearing on intent to commit robbery was harmless). As Judge Silverman recognizes, we defer to state court interpretations of state law, but, in this case, there is no such interpretation of state law to defer to. The harmlessness question is simply whether there is sufficient evidence in the record to support a second-degree murder conviction. *Compare Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (holding that a federal habeas court must defer to a state-court interpretation of the transferred intent doctrine as applied to a state murder statute).

**B**

In California, second-degree "[m]urder is the unlawful killing of a human being . . . with malice aforethought." Cal. Penal Code § 187. There are three types of second degree murder: (1) "unpremeditated murder with express malice," (2) "implied malice murder," and (3) "second degree felony murder." *People v. Swain*, 909 P.2d 994, 998 (Cal. 1996). The first type clearly does not apply in this case. As I explain below, there is insufficient evidence supporting a second-degree murder conviction under either an implied malice or a felony murder theory.

**1**

"[A] killer acts with implied malice only when acting with an awareness of *endangering human life*." *People v. Knoller*, 158 P.3d 731, 739 (Cal. 2007). In *Knoller*, the California Supreme Court reversed an intermediate appellate court which had held that a theory of implied malice "can be based simply on a defendant's awareness of the risk of causing *serious bodily injury to another*." *Id.* at 732; *see also People v. Phillips*, 414 P.2d 353, 363 (Cal. 1966) (approving second-degree murder instruction that the killing must result from the defendant's act, "the natural consequences of which are dangerous to life, which act is deliberately performed by a person who *knows* that his conduct *endangers the life* of another") (emphases added), *overruled on other grounds by People v. Flood*, 957 P.2d 869, 882 (Cal. 1998).

Under these standards, the trial court did not have a sufficient factual basis to conclude that Loftis was aware that his actions endangered Celena's life. Assuming, without deciding, that this Court can rely on the probation report that

was produced after the plea colloquy, nothing in the probation report supports a finding of guilt. According to the probation report, after Celena ingested the crystal meth, she began to get "'*crazy*,' by freaking out, getting hot and shaking." There is absolutely no indication that Loftis knew at that point that Celena's life was in danger. Later, in the car, Loftis "told the others he wanted to take her to the hospital," but "Saiz said no, that she was gone (dead)." Thus, once Loftis demonstrated an awareness that Celena's life was in danger he believed that he could no longer take any action to save her life because she was already dead. The fact that Loftis wanted to take Celena to the hospital when he realized the severity of her condition suggests that he had not recognized that her life was in danger when she was ill earlier in the evening. *See People v. Whisenhunt*, 186 P.3d 496, 527 (Cal. 2008) (holding that there was no substantial evidence to support a theory of implied malice murder in a case in which testimony indicated that the defendant was initially "vaguely concerned about [the victim]'s condition," and "did not become seriously concerned about [the victim]'s condition until several hours later . . . at which point . . . he immediately" sought medical help).

**2**

The State does not argue that the facts in this case support an implied malice theory of second-degree murder. Instead, the State argues that the probation report supports a theory under which the actus reus of the murder was Loftis' failure to act after providing Celena with drugs. The State does not explain how this theory maps onto any of California's three types of second-degree murder. *See Swain*, 909 P.2d at 998. And the State does not cite any statute or case supporting its

contention that this theory is sufficient for a second-degree murder conviction.[9]

The State's argument is closest to arguing that there is a sufficient factual basis for second-degree felony murder. But in order to be convicted based on second-degree felony murder, the defendant had to commit an "inherently dangerous felony," which is "an offense carrying a high probability that death will result." *People v. Patterson*, 778 P.2d 549, 553, 558 (Cal. 1989) (internal quotation marks omitted). "In determining whether a felony is inherently dangerous, the court looks to the elements of the felony *in the abstract*, not the particular facts of the case, i.e., not to the defendant's specific conduct." *People v. Hansen*, 885 P.2d 1022, 1026 (Cal. 1994) (internal quotation marks omitted), *overruled on other grounds by People v. Sarun Chun*, 203 P.3d 425, 442 (Cal. 2009). The State has not cited, and we are not aware of, any California case which has held that furnishing crystal meth, or any other felony for which there is a factual basis in this case, is inherently dangerous for the purpose of the second degree felony murder rule. *Compare, e.g.*, *People v. James*, 74 Cal. Rptr. 2d 7, 23 (Ct. App. 1998) (manufacturing meth is an inherently dangerous felony). Nor does the State argue that this Court should establish that furnishing crystal meth is an inherently dangerous felony. Accordingly, the State's alternate theory fails.

---

[9] Even assuming that, as the state court found, Loftis could have been convicted based on an omission – which requires an underlying duty to act – there is still nothing in the record to indicate that Loftis failed to act and knew that his failure endangered Celena's life.

## IV

Because I conclude that there is insufficient evidence indicating Loftis' guilt, the trial court's failure to establish a factual basis for his plea had a substantial and injurious effect.[10]  I would therefore reverse the district court's judgment denying the petition for writ of habeas corpus and remand with directions to issue a conditional writ releasing Loftis from custody, unless, within a reasonable period of time, the State recommences proceedings against Loftis.  I respectfully dissent.

---

[10] Loftis also separately claims that his plea was not intelligent and voluntary.  I would dismiss as unexhausted any claim that his plea was not intelligent and voluntary that is not based on his *Alford* argument.